# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

MICHAEL JONES on behalf of )
PATTI MARTENSEN, )
 )
    Plaintiff, )
 )
v. )
 ) Case No. CV414-130
CAROLYN COLVIN, )
Acting Commissioner of )
Social Security, )
 )
    Defendant. )

## REPORT AND RECOMMENDATION

Alleging disability due to diabetes, chronic renal insufficiency, osteomyelitis, peripheral vascular disease, septic arthritis, peripheral neuropathy, status post knee arthroscopy, and hypertension, Michael Jones seeks judicial review of the Social Security Commissioner's denial of his wife's (Patti Martensen's) application for a period of disability and disability benefits. Docs. 1; 9.[1] That denial followed Jones exhaustion of Martensen's administrative remedies, doc. 10 at 2, so his claims are now ripe for judicial review.

---

[1] The Court is citing to its docketing software's pagination; it does not always line up with each paper document's printed pagination.

# I. GOVERNING STANDARDS

In social security cases, courts:

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the ALJ applies

> a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform

2

her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience.[1] *Id.* § 404.1520(a)(4)(v). An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015) (footnote added).

## II. BACKGROUND

Martensen -- 48 at the time of her death, less than three months prior to her hearing before the ALJ, doc. 7-1 at 14; doc. 7-4 at 34 -- had a high school education, *id.* at 19, and past relevant work experience as a cashier, cashier supervisor, and security guard. *Id.* at 47. She lived with diabetes -- the root cause of many of her other impairments -- for twenty years, *id.* at 16, and high blood pressure for over thirty. *Id.*

---

[1] At steps four and five the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 2015 WL 859830 at * 4 (11th Cir. Mar. 2, 2015) (quotes and cite omitted).

In January 2010, Martensen stopped working as a cashier at a Love's truck stop because of "headaches, kidneys hurting, [and an inability to] stay on her feet a long period of time." *Id.* at 32. Unemployed thereafter, Martensen spent her days getting her kids ready for school and generally taking care of the house. *Id.* at 34. She "[w]oke up, cooked breakfast," and prepared Jones' work clothes. After taking the kids to school, "she'd come back home and want to lay down. And in the afternoon she'd get up and cook supper and sit down in the chair." *Id.*

Martensen continued to drive up until her death, mainly to the children's school and to the grocery store, *id.* at 34-35, although she "didn't believe in using motorized carts" at the store. *Id.* at 37. She also had no problem "keeping house" and cleaning, and could stay on her feet without issue for two to three hours. *Id.* at 35. Although she took about a three hour nap each day around lunchtime, and then "laid there in bed and watched TV" after dinner, those periods of rest were not necessities. *Id.* She took breaks while cooking and cleaning, but at least sometimes used them to "smoke her a cigarette." *Id.* at 37.

Martensen filed for disability benefits on February 3, 2011, alleging a disability onset of January 28, 2010. Doc. 7-4 at 2. Following administrative denial, Martensen died, and Jones, her husband, appeared and testified at a November 2, 2012 hearing before the ALJ, who later denied her benefits. Doc. 7-1 at 14.

The ALJ determined that Martensen had not engaged in substantial gainful activity since January 28, 2010, and had the severe impairments of "chronic renal insufficiency; osteomyelitis; peripheral vascular disease; septic arthritis; type II diabetes mellitus; status post knee arthroscopy; and peripheral neuropathy (20 CFR 404.1520(c) and 416.920(c))." Doc. 7-1 at 16. That brought her to step three, where the ALJ found that she did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.* at 17. The ALJ then conducted an RFC assessment, which, as noted above at note 1, is "based upon all of the relevant evidence[] of a claimant's remaining ability to do work despite [her] impairments." *Lewis v. Callahan*, 125 F.3d 1336, 1440 (11th Cir. 1997); *Harris v. Colvin*, 2014 WL 5844240 at * 6 (S.D. Ala. Nov. 12, 2014).

The ALJ found that Martensen had an RFC that enabled her to perform sedentary work, "except that she could perform no forceful gripping with her left hand." Doc. 7-1 at 17. After finding Martensen unable to perform past relevant work, *id.* at 19, the ALJ proceeded to step five and consulted a vocational expert (VE) to determine if she could make an adjustment to other work. *Id.* The VE opined that Martensen could perform jobs such as account clerk, order clerk, and telephone clerk. *Id.* at 20.

Relying on the VE's testimony, which the ALJ found "consistent with the information contained in the Dictionary of Occupational Titles," *id.*, the ALJ found that Martensen could adjust "to other work that exists in significant numbers in the national economy," and therefore was not disabled. *Id.*; *see also* 20 C.F.R. § 404.1520(a)(4)(v) ("At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.").

## III. ANALYSIS

Jones complains that the ALJ erred by "never even discussing whether [Martensen's] severe medical conditions caused her death."[2] Doc. 9 at 3. That, he says, mandates "a remand to require the ALJ to explain his decision." *Id.* at 8. Not so.

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment *which can be expected to result in death* or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (emphasis added). Within that definition exist two separate and distinct requirements (among others): that a claimant be impaired, and that the impairment last for a particular duration (at least 12 months or be expected to result in death). *Id.*; 20 C.F.R. § 404.1509 (section titled "How long the impairment must last").

Step two of the "sequential process for determining whether a

---

[2] Jones did not raise other arguments, including any regarding the ALJ's findings and decision. He thus waived all challenges to the ALJ's decision except the one briefed. *See Sanchez v. Comm'r of Soc. Sec'y*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (disability claimant's failure to raise arguments in brief waived challenges to ALJ's factual findings) (citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.")).

7

claimant is disabled" -- where the ALJ determines whether a claimant has a "severe impairment" -- accounts for both. *Stone*, 596 F. App'x at 879; *Gray v. Astrue*, 2009 WL 1598798 at * 5 (S.D.N.Y. June 8, 2009) ("At the second step in the evaluation process, the SSA considers the severity and the duration of a claimant's impairment."). "To qualify as a severe impairment at step two, an impairment must be expected to result in death or" to last "for a continuous period of not less than 12 months." *Dixon v. Astrue*, 2013 WL 1136711 at * 3 (M.D. Ga. Feb. 25, 2013); *see also* 20 C.F.R. § 404.1509; Social Security Disability Claims: Practice and Procedure § 22:269 (2d ed. 2014) ("In SSI cases, the claimant's death may establish the 'duration' requirement. . . .").

That is not to say that severity and duration of impairment are coextensive -- they aren't. *See Gray*, 2009 WL 1598798 at *5 (severity and duration are "separate questions that require separate analyses"). But it remains the case that moving past step two requires that a claimant's alleged disability satisfy severity *and* duration, and death definitely speaks to the latter. But death does not otherwise drive the disability determination. Step three, for example, looks only to whether

a claimant's impairments are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Stone*, 596 F. App'x at 879. That list does not include "death." The RFC analysis likewise lacks a role for death. *See* 20 C.F.R. § 404.1545 ("Residual functional capacity assessment. Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations."). Indeed, to determine an RFC is to look at what a claimant can do while *alive*, despite any impairments. That an impairment can result in death is irrelevant to that determination. Steps four and five are no different. With both, the ALJ looks at the claimant's RFC compared to past work (step four) and available jobs (step five), neither of which relate to an impairment's likelihood of causing death.

In any case, step two -- and thus any consideration (or lack thereof) of Martensen's death -- is not what derailed her disability application; after all, the ALJ readily found it satisfied. *See* doc. 7-1 at 16 (listing seven different severe impairments that met step two's requirements). What knocked her claim out was the ALJ's finding that Martensen's RFC

allowed her to perform jobs that exist in the national economy. That resulted in the "not disabled" finding that Jones now contests. *Id.* at 19-20. Whether Martensen's severe impairments caused her death is irrelevant to that conclusion.

Jones also criticizes the ALJ for applying the "sequential" process "as if [Martensen] were still alive." Doc. 9 at 7. Death, however, plays no role in determining whether someone was disabled while alive, except insofar as the likelihood of death from an impairment satisfies step two's duration requirement. *See* 20 C.F.R. §§ 404.1520, 416.920; *supra* at 7-8. Dead or alive at the time of hearing, the question remains whether a claimant was, while alive, unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The ALJ answered that question in the affirmative after completing each of the five steps of the "sequential process for determining whether a claimant is disabled." *Stone*, 596 F. App'x at 879. He thus did not commit "fatal error when he failed to include any analysis

in the decision of whether any of Ms. Martensen's impairments resulted in her death." Doc. 9 at 7.

## IV. CONCLUSION

Accordingly, the Commissioner's decision denying benefits should be affirmed.

**SO REPORTED AND RECOMMENDED** this 12TH day of August, 2015.

*/s/ M. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA